UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| Linda Kirshner,<br><br>      Plaintiff,<br><br>      v.<br><br>Gregory E. Smith,<br><br>      Defendant. | Civil Action No. 2:23–cv–397 |

### REPORT AND RECOMMENDATION[1]
(Doc. 21)

Plaintiff Linda Kirshner brings this diversity action against Defendant Gregory E. Smith "to domesticate and enforce" an Illinois state court judgment against Defendant. (Doc. 1 at 1.) Although Smith appeared in the Illinois case, he has not appeared in this case. Plaintiff therefore seeks a default judgment against him. (*See* Doc. 21.) As explained below, I recommend that Plaintiff's Illinois state court judgment be enforced, and that judgment be entered against Defendant in the amount awarded in the Illinois judgment.

---

[1] Although Kirshner has consented to jurisdiction by the Magistrate Judge over this case pursuant to 28 U.S.C. § 636(c) (*see* Doc. 5), the decision on Kirshner's pending "Amended Motion for Entry of Default Judgment" must be in the form of a report and recommendation because (a) the Motion constitutes a "pretrial matter dispositive of a claim or defense," Fed. R. Civ. P. 72(b)(1), and (b) Smith, the defaulting party, has not consented to jurisdiction by the Magistrate Judge. A recommended disposition is appropriate in these circumstances. *See Revision Mil. Ltd. v. Gideon Servs., Inc.*, Civil Action No. 2:17–cv–128, 2017 WL 5632700, at *1 (D. Vt. Oct. 31, 2017) ("Notwithstanding the fact that Plaintiff has consented to jurisdiction by the Magistrate Judge over this case pursuant to 28 U.S.C. § 636(c), . . . the decision on Plaintiff's Motion for Default must be in the form of a Report and Recommendation because . . . the defaulting party . . . has not consented to jurisdiction by the Magistrate Judge."), *report and recommendation adopted*, 2017 WL 5634872 (Nov. 21, 2017); *Rodrigues v. Corona Advances, Inc.*, No. 15-CV-6815 (BCM), 2018 WL 4043149, at *3 (S.D.N.Y. Aug. 24, 2018) (same) (listing cases).

**Background Facts and Procedure**

In November 2020, Plaintiff filed a complaint against Defendant in the Circuit Court of Cook County, Illinois for breach of contract, fraud, breach of fiduciary duty, unjust enrichment, and promissory estoppel. (*See* Doc. 10-3.) In the complaint, Plaintiff alleged that Defendant served as her financial investment advisor for a period of several years beginning in approximately 2013, and that Defendant induced Plaintiff to transfer $78,000 to him for investment purposes and never returned any portion of the investment principal or provided any accounting of funds to her. (*Id.* at 2–3.) Plaintiff further alleged that Defendant "has admitted liability to [Plaintiff] for the outstanding funds." (*Id.* at 3, ¶ 8.)

According to the complaint in the Illinois case, both Plaintiff and Defendant were residents of Cook County, Illinois when the case was filed. (*Id.* ¶¶ 10–11.) Defendant was personally served, appeared, and was represented by counsel in that lawsuit. He did not challenge personal jurisdiction.[2] (Doc. 21-2 at 2; Doc. 21-3 at 2–4.) The case concluded as to Defendant on July 25, 2023, when the Illinois court granted Plaintiff's motion for summary judgment and entered judgment against Defendant in the amount of $156,000. (Doc. 1-1 at 2; *see* Doc. 1-2 at 2.) Given Defendant's failure to appeal that judgment in the time allowed for an appeal under Illinois law, the judgment is final.

At some point after he was served in the Illinois case, Defendant moved to Vermont. (*See* Doc. 1 at 1, ¶ 2 ("[Smith] is a citizen of the state of Vermont."); Doc. 3 (affidavit documenting personal service on Smith in Brattleboro, Vermont on October 15, 2023);

---

[2] Under Illinois law, "[p]ersonal jurisdiction . . . is waived . . . by a person's participation in the proceedings in issue." *Andreasen v. Suburban Bank of Bartlett*, 173 Ill. App. 3d 333, 339, 527 N.E.2d 595, 599–600 (1988).

Doc. 10-9 at 2 (Defendant's opposition to Plaintiff's motion for summary judgment in Illinois case, filed on May 22, 2023, indicating Defendant's address was in "Brattleboro, VT").) Accordingly, on September 14, 2023, Plaintiff filed in this Court a "Complaint to Domesticate and Enforce Foreign Judgment." (Doc. 1.) Plaintiff asserts that this Court has subject matter jurisdiction over the case under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000. (*Id.* at 1.) The Complaint attaches a certified copy of the Illinois judgment (Doc. 1-1 at 2; Doc. 1-2 at 2), alleges that Defendant "has not satisfied any portion" of that judgment (Doc. 1 at 2, ¶ 10), and seeks "to domesticate and enforce the [j]udgment against [Smith] in the state of Vermont" (*id.* at 2).

Although he was served with the Complaint in this case (*see* Doc. 3), Defendant has not appeared in the case. Plaintiff obtained an Entry of Default from the Clerk of this Court on January 22, 2024. (Doc. 9.)

On January 26, 2024, Plaintiff filed a Motion for Summary Judgment. (Doc. 10; *see* Docs. 10-1–10-10.) The Motion "[sought] an order domesticating a judgment entered by the Circuit Court of Cook County, Illinois in 2023" (Doc. 10 at 1), so that Plaintiff may "begin enforcement" of the Illinois judgment against Defendant (*id.* at 4). Plaintiff argued that Defendant had not satisfied any portion of the Illinois judgment and had not responded to the Complaint in this case. Therefore, she requested that the Court "grant [Plaintiff] summary judgment to domesticate the Illinois [j]udgment in Vermont and allow her to begin enforcement." (*Id.*) The Motion consisted of three pages and did not provide relevant legal authority allowing a federal court to "domesticate" a state court judgment.

On March 20, 2024, Plaintiff filed a two-page "Motion for Entry of Default Judgment." (Doc. 12.) The Motion relied exclusively on the Motion for Summary Judgment

for the requested relief: "As detailed in plaintiff's motion for summary judgment . . . , the allegations in the complaint entitled plaintiff to judgment as a matter of law because the judgment of the Illinois court is entitled to full faith and credit in Vermont." (*Id.* at 2.)

On April 5, 2024, the Court issued a Text Order scheduling a status conference. In relevant part, the Order stated:

> The Court will discuss with counsel the following issues at the [status] conference: (1) whether the pending . . . MOTION for Summary Judgment should be withdrawn, given the subsequent filing of . . . [the] MOTION for Default Judgment; (2) what legal authority allows for the "domestication," registration, or other recognition of a state court judgment by a federal court; and (3) what measures, after "domesticating," registering, or otherwise recognizing the Illinois Judgment in this Court, Plaintiff intends to take in an effort to enforce the Judgment against Defendant, and what legal authority allows for that enforcement.

On April 9, 2024, Plaintiff's counsel appeared via Zoom for the status conference. Plaintiff's counsel withdrew the Motion for Summary Judgment, in response to the Court's questioning about the filing procedure followed in this case, i.e., filing a motion for summary judgment after a clerk's entry of default against Defendant.[3] The Court also inquired as to what particular relief Plaintiff is seeking in this lawsuit. Given Plaintiff's vague Motion for Default Judgment, coupled with its apparent misapprehension of the applicable procedure when a

---

[3] Procedurally, summary judgment is not the proper motion after a clerk's entry of default. The plaintiff should instead request default judgment under Rule 55(b)(2). *See Progressive Advanced Ins. Co. v. Zafuto*, 19-CV-00338-EAW-JJM, 2020 WL 2115420, at *2 (W.D.N.Y. Mar. 23, 2020) ("To the extent that it seeks summary judgment against [defendant], such relief is improper: since it has obtained a clerk's entry of default against [defendant], the appropriate procedure for plaintiff to follow is a default judgment pursuant to Fed. R. Civ. P. 55(b)(2)." (internal quotation marks omitted)); *Penn-America Ins. Co. v. Pindea*, CIVIL ACTION NO. 3:16-5058, 2016 WL 9223928, at *1 (S.D.W. Va. Nov. 7, 2016) ("Summary judgment is not the proper procedural course to resolve an action against defaulted defendants. Upon default[,] the well-pleaded allegations of the complaint are established by default—they are not litigated."); *Harleyville Mut. Ins. Co. v. Vanover*, No. 05-5048, 2006 WL 374765, at *1 (W.D. Ark. Feb. 8, 2006) ("Entry of summary judgment . . . is inappropriate because [the defendant] is in default and the issues have not been actually litigated against him."); *Phillips Factors Corp. v. Harbor Lane of Pensacola, Inc.*, 648 F. Supp. 1580, 1583 (M.D.N.C. 1986) ("Summary judgment would be an inapt procedural vehicle because . . . [the] issues have not been actually litigated but established by default from the defendant's failure to appear.").

4

party requests an order from a federal court to permit enforcement of a state court order against a defaulting party in another state,[4] the Court denied the Motion without prejudice and recommended that counsel file an amended motion under the applicable law.

On May 9, 2024, Plaintiff filed the pending "Amended Motion for Entry of Default Judgment" (Doc. 21), attaching the Clerk's Entry of Default in this District, an affidavit of service from the Illinois case documenting Defendant's service of process in Illinois, a notice of appearance filed on behalf of Defendant in the Illinois case, and a "Proposed Default Judgment Order" (Docs. 21-1–21-4). Plaintiff contends that this Court may exercise both subject matter jurisdiction over the case and personal jurisdiction over Defendant, a citizen of Vermont. (Doc. 21 at 2.) The Amended Motion further explains that the Illinois state court properly exercised personal jurisdiction over Defendant because he was served with process in that State, and he appeared in the underlying case without challenging personal jurisdiction.

---

[4] For example, the summary judgment motion requested a "judgment to domesticate the Illinois Judgment in Vermont and allow her to begin enforcement." (Doc. 10 at 4.) However, the terms "domesticating" or "registering" a foreign judgment generally apply to either (a) enforcement of a judgment of one state court in another state court, or (b) enforcement of a judgment of one federal district court in another federal district court. The terms do not apply to enforcement of a state court judgment in a federal district court, as Plaintiff seeks in this case. *See Villoldo v. Republic of Cuba*, Civil Action No. 21-cv-02497-NYW-NRN, 2023 WL 5671493, at *4 (D. Colo. Sept. 1, 2023) ("The Court finds the entry of a judgment recognizing the validity and enforceability of the state court judgment as distinct from registration of a state court judgment. Registration of a judgment in federal court, which is permitted by statute and *only with respect to judgments of other federal courts*, requires only that a certified copy of the judgment be filed in the registering court. 28 U.S.C. § 1963. Registration of a judgment is a rapid procedure that does not require the intervention of a judge and does not accord the judgment debtor the same right to advance defensive matter as does an independent action." (emphasis added) (citations and internal quotation marks omitted)); *Griffith v. Paran LLP*, No. Case No. 2:21-cv-01397-GMN-BNW, 2022 WL 409725, at *2 (D. Nev. Feb. 10, 2022) ("[T]he case law makes clear that giving a state court's judgment full faith and credit is not the same as enforcing or registering that judgment in federal court. This is because the act of enforcement or registration transforms the state court judgment into a federal judgment. Moreover, federal courts generally lack the authority to enforce or register state court judgments."), *report and recommendation adopted*, 2022 WL 605432 (Mar. 1, 2022); *Ellenoff Grossman & Schole LPP v. Tempus Applied Sols. Holdings, Inc.*, Civil Action No. 4:20-cv-68, 2020 WL 4926144, at *3 (E.D. Va. Aug. 21, 2020) ("Notwithstanding the full faith and credit obligation, there is no statutory procedure that empowers federal courts to register state court judgments, thereby adopting a state court judgment as a federal court judgment."); *Cont'l Cas. Co. v. Argentine Republic*, 893 F. Supp. 2d 747, 753 (E.D. Va. 2012) ("[T]he proper treatment of a state court judgment by a federal court is not recognition, or registration, but enforcement.").

(*Id.* at 2–3.) Plaintiff asks the Court to "enter a judgment . . . authoriz[ing] [her] to enforce the Illinois judgment pursuant to Vermont law." (*Id.* at 3.)

## Legal Standard

Federal Rule of Civil Procedure 55 permits a plaintiff to obtain a default judgment against a defendant who has failed to plead or otherwise defend against a lawsuit. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). The Rules specify a two-step procedure. The first step is to seek a clerk's entry of default, which Plaintiff obtained in this case (*see* Doc. 9). Fed. R. Civ. P. 55(a). After entry of default, a plaintiff must then adhere to the requirements of Rule 55(b) to obtain a default judgment. *Peterson v. Syracuse Police Dep't*, 467 F. App'x 31, 34 (2d Cir. 2012). "An entry of default judgment 'converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides [the plaintiff] is entitled.'" *Id.* (alteration in original) (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011)).

When a defendant defaults, his liability is ordinarily deemed resolved, and the court proceeds to the question of damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("[A] party's default is deemed to constitute a concession of all well[-]pleaded allegations of liability . . . ."); *Santillan v. Henao*, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011) ("A default . . . effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct; that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged."). Courts may not, however, "skip over all questions of liability in deciding motions for default judgments." *Hernandez v. Little K's Landscaping, LLC*, Civil No. 3:23-CV-00460 (SVN),

6


2024 WL 1121321, at *3 (D. Conn. Feb. 5, 2024).  "[A] district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action."  *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).  Before judgment may be entered, "the court must determine whether [the] plaintiff's factual allegations are sufficient to state a claim for relief on each of the causes of action for which the plaintiff seeks judgment by default."  *Evanauskas v. Strumpf*, No. CIV. A. 300CV1106JCH, 2001 WL 777477, at *1 (D. Conn. June 27, 2001) (citing *Au Bon Pain*, 653 F.2d at 65).  "The court may grant only the relief for which a sufficient basis is asserted in the complaint."  *Id.*; *see Taizhou Zhongneng Imp. & Exp. Co., Ltd v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013) ("A default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant."); *In re Indus. Diamonds Antitrust Litig.*, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000) ("While a default constitutes an admission of all the facts 'well pleaded' in the complaint, it does not admit any conclusions of law alleged therein, nor establish the legal sufficiency of any cause of action.").

Once liability is determined, the court considers damages.  Rule 55(b) requires that a default judgment may not be entered until the amount of damages has been ascertained "with reasonable certainty."  *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true.").  Under Rule 55(b)(2), the court may conduct a hearing to determine the amount of damages, but a hearing is not necessary "as long as [the court] ensured that there was a basis for the damages specified in the default judgment."  *Transatlantic Marine Claims*

*Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997) (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). "By its terms, [Rule] 55(b)(2) leaves the decision of whether a hearing is necessary to the discretion of the district court." *Fustok*, 873 F.2d at 40.

## Discussion

Unlike the ordinary civil case where a meritorious defense may be available to a defendant, this case is simply an action to enforce a state court judgment. The Illinois court has already adjudicated the parties' underlying dispute, and the time for interposing defenses on the merits of the state action has expired. Defendant apparently had notice of the judgment entered in Plaintiff's favor at the termination of the Illinois case, and he did not object or appeal. Plaintiff has properly served Defendant in Vermont with a Complaint alleging that he owes Plaintiff $156,000 as specified in the Illinois judgment. Defendant has failed to respond or otherwise defend himself. Moreover, Defendant has not responded to either Plaintiff's request for entry of default or the pending "Amended Motion for Entry of Default Judgment." (Doc. 21.)

Given Defendant's lack of response, the Court must construe all well-pleaded allegations in the Complaint as admitted. *See Greyhound Exhibitgroup*, 973 F.2d at 158. As noted above, however, the Complaint seeks in part "to domesticate" a state court judgment. (Doc. 1 at 1.) The process of "domesticating" or "registering" a foreign judgment generally involves a creditor seeking to enforce a judgment of one state court in another state court under the Uniform Enforcement of Foreign Judgments Act (UEFJA). A different procedure

applies, however, when a plaintiff seeks to enforce a state judgment in a federal court.[5] *See Villoldo v. Republic of Cuba*, 659 F. Supp. 3d 1158, 1186 (D. Colo. 2023). "Unlike state courts that have domestication procedures, there is no procedure in the federal courts for the recognition or confirmation of state court judgments." *Id.* (quoting *Cont'l Cas. Co. v. Argentine Republic*, 893 F. Supp. 2d 747, 753 (E.D. Va. 2012) ("There is no mechanism for the recognition or confirmation by a federal court of a state court judgment.")). "[T]he proper treatment of a state court judgment by a federal court is not recognition, . . . but enforcement." *Villoldo*, 659 F. Supp. 3d at 1186; *see Berke v. Northcutt*, 798 F.2d 468 (6th Cir. 1986) ("The most direct consequence of applying the full faith and credit statute is that a federal court must enforce a state court judgment when an action is brought for that purpose." (internal quotation marks omitted)).

Similar to state court proceedings to domesticate or register the judgments of other state courts, there is a process for registering a judgment of one federal court in another federal court. Under 28 U.S.C. § 1963, once a judgment creditor records a certified copy of a judgment from one district court in another district court, the judgment "shall have the same

---

[5] Virtually every state and the District of Columbia have adopted the UEFJA, which renders the domestication of another state's judgment "essentially automatic," allowing a judgment creditor to efficiently enforce a judgment of one state court in another state court. Gregory H. Shill, *Ending Judgment Arbitrage: Jurisdictional Competition and the Enforcement of Foreign Money Judgments in the United States*, 54 Harv. Int'l L.J. 459, 469 (2013). The purpose of the statute derives from the constitutional requirement that "[f]ull faith and credit" be given to judgments rendered by other states. *See* U.S. Const. art. IV, § 1 ("Full Faith and Credit shall be given in each State to the . . . judicial Proceedings of every other State."). Vermont is apparently one of only two states that has not adopted the UEFJA. *See* James P. George, *Facilitating Money Judgment Enforcement Between Canada and the United States*, 72 Hastings L.J. 99, 106 n.16 (2020) ("As of 2019, the [UEFJA] has been enacted in forty-eight states (all but California and Vermont) plus the District of Columbia and the U.S. Virgin Islands."). However, the Vermont courts "give full faith and credit to foreign judgments" pursuant to the United States Constitution. *See H & E Equip. Servs., Inc. v. Cassani Elec., Inc.*, 2017 VT 17, ¶ 16, 204 Vt. 559, 566 (citing U.S. Const. art. IV, § 1); *Wursthaus, Inc. v. Cerreta*, 149 Vt. 54, 58, 539 A.2d 534, 537 (1987) (holding that a sister-state judgment "is entitled to full faith and credit in the absence of a showing that that court lacked jurisdiction or acted to deprive defendant of a reasonable opportunity to be heard"); *Hall v. McCormick*, 154 Vt. 592, 595, 580 A.2d 968, 970 (1990) (noting "presumption that a judgment of a sister state is valid" and that it is a "heavy burden" to undermine an order of another state court).

effect as a judgment of the district court of the district where registered and may be enforced in like manner." *See Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 122 (2d Cir. 2017) ("[B]y statute first enacted in 1948, federal district courts have been empowered summarily to *register* the judgments of *other federal district courts* to permit enforcement in the registering district."). "[T]he purposes of § 1963 were to simplify and facilitate the enforcement of federal judgments, at least those for money, to eliminate the necessity and expense of a second lawsuit, and to avoid the impediments, such as diversity of citizenship, which new and distinct federal litigation might otherwise encounter." *Stanford v. Utley*, 341 F.2d 265, 270 (8th Cir. 1965).

But section 1963 "implicitly does not permit federal courts to register *state court judgments*," as Plaintiff requests in this case. *Woo v. Spackman*, No. 1:18-mc-91545, 2019 WL 6715134, at *2 (D. Mass. Dec. 10, 2019) (emphasis added), *aff'd*, 988 F.3d 47, 48–49 (1st Cir. 2021); *see Wenger v. U.S. Postal Serv.*, No. 14-CV-4366 (JS)(GRB), 2015 WL 5562415, at *2 (E.D.N.Y. Sept. 18, 2015) ("Section 1963 does not allow for the registration of state court judgments, and nothing in section 1963 provides a United States district court with the jurisdiction to enforce a state court judgment."); *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 945 F.3d 1270, 1274 (10th Cir. 2019) ("We join the courts holding that § 1963 applies only to registration of federal-court judgments in federal courts— not to state-court judgments."); *Fox Painting Co. v. N.L.R.B.*, 16 F.3d 115, 117 (6th Cir. 1994) ("Nothing in the language of section 1963 grants authority to a district court to register judgments of any courts other than other district courts or the Court of International Trade. The language is unambiguous[:] . . . a federal district court . . . lack[s] jurisdiction to register a judgment of [any state]."); *Woo*, 2019 WL 6715134, at *3 ("The Court joins the Second,

10

Sixth, and Ninth Circuits, as well as the District of New Hampshire, in finding that 28 U.S.C. § 1963 only empowers federal district courts to register the judgments of other federal district courts."); *Griffith v. Paran, LLP*, No. 19-12030, 2019 WL 8008963, at *2 (E.D. Mich. Nov. 4, 2019) (recommending that "case be dismissed for lack of jurisdiction because a state court judgment may not be registered in a federal district court under 28 U.S.C. § 1963"), *report and recommendation adopted*, 2020 WL 255761 (Jan. 16, 2020).

Notwithstanding the express language of the Complaint "seek[ing] to domesticate and enforce the Judgment" (Doc. 1 at 2, ¶ 10), it appears that Plaintiff is seeking to file a civil action to enforce—rather than to domesticate or register—the judgment. *See, e.g.*, *Ingevity Corp. v. Regent Tek Indus., Inc.*, 22-CV-565 (NGG) (RLM), 2022 WL 18859010, at *5 (E.D.N.Y. Nov. 23, 2022) (construing complaint as request for enforcement of state court judgment, where complaint stated that "Ingevity is entitled to the entry of judgment against [Regent Tek] in this Court on the South Carolina Judgment, so that it may be *enforced* in the state of New York"). Although recognizing that "[a]ctions to enforce state court judgments in federal court are rare," the Second Circuit has endorsed such actions on full faith and credit grounds. *Mobil Cerro Negro*, 863 F.3d at 122 ("Since 1948, federal courts have been directed by 28 U.S.C. § 1738 to accord state court judgments full faith and credit."); *see Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."); *see also Ingevity Corp.*, 2022 WL 18859010, at *6 ("[P]ursuant to the full faith and credit doctrine, the [federal] court is obliged to enforce [a state] judgment . . . to the extent that the courts of the rendering state would be similarly bound." (internal quotation marks omitted)); *Villoldo v.*

11

*Republic of Cuba*, Civil Action No. 21-cv-02497-NYW-NRN, 2023 WL 5671493, at *4 (D. Colo. Sept. 1, 2023) ("[E]ntry of a federal judgment is necessary to fulfill the [c]ourt's obligation to give the state court judgment full faith and credit and to permit [the plaintiff] to enforce the state court judgment.").

Under 28 U.S.C. § 1738, federal courts are required to give full faith and credit to the judicial proceedings of the states. *See Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 483 n.24 (1982) ("Section 1738 was enacted to implement the Full Faith and Credit Clause, and specifically to [e]nsure that federal courts, not included within the constitutional provision, would be bound by state judgments." (citation omitted)); 18B Wright & Miller, *Fed. Prac. & Proc.* § 4469 (3d ed. 2024) ("The more recent decisions . . . are unanimous [in holding that] . . . [t]he Constitutional [full faith and credit] clause does not speak directly to the federal courts, and it is only [section 1738] and common law that extend the full-faith-and-credit obligation [to] federal courts."); *Bodkin v. Garfinkle*, 412 F. Supp. 2d 205, 211 (E.D.N.Y. 2006) ("[O]nce a state action is concluded, the Full Faith and Credit Act, 28 U.S.C. § 1738, requires that the federal court give that judgment the same preclusive effect it would otherwise be afforded in the state court."); 18B Wright & Miller, *Fed. Prac. & Proc.* § 4469 (3d ed. 2024) (citing cases and noting that "[m]any cases have ruled that federal courts are courts 'within the United States,' bound by [section 1738] to give the same full faith and credit to state judgments as would be given by the courts of the state from which they are taken").

Section 1738, however, does not create a federal cause of action or establish federal subject matter jurisdiction of an action to enforce a state court judgment. The plaintiff must establish an independent basis for jurisdiction over the enforcement action. *See Thompson v.*

12

*Thompson*, 484 U.S. 174, 182–83 (1988) ("[T]he Full Faith and Credit Clause, in either its constitutional or statutory incarnations, does not give rise to an implied federal cause of action."); *Vera v. Republic of Cuba*, 867 F.3d 310, 320 (2d Cir. 2017) ("[T]he Full Faith and Credit Act, which requires state court judgments to receive the same credit, validity, and effect in every other court in the United States, 28 U.S.C. § 1738, has no bearing on the question of whether a district court has subject matter jurisdiction to hear a claim."). The party seeking to enforce a state court judgment in a federal court therefore "must file a civil action in a federal court having independent jurisdiction to hear the claim." *Ingevity Corp.*, 2022 WL 18859010, at *5; *see Sea Trade Mar. Corp. v. Coutsodontis*, 09 Civ. 488 (LGS)(HBP), 2014 WL 13004435, at *4 (S.D.N.Y. July 30, 2014) ("Although a federal court must give full faith and credit to a state court's judgment, 28 U.S.C. § 1738, a federal court does not necessarily have jurisdiction to enforce [that] judgment."), *report and recommendation adopted*, 2014 WL 12804017 (Aug. 22, 2014); *Bronkovic v. Sandholm*, No. CV 95 3134 (RJD), 1996 WL 743346, at *1 (E.D.N.Y. Dec. 6, 1996) ("Before enforcing a state court judgment, a federal court must establish an independent basis for its own subject-matter jurisdiction."); *United States v. Fairbank Realty Corp.*, 50 F. Supp. 373, 375 (E.D.N.Y. 1943) ("It is academic that it would be impossible for the holder of a judgment recovered in a state court to issue execution on that judgment in this [federal] Court . . . until he first sued on that judgment and recovered one in this Court.") , *aff'd sub nom. Rottenberg v. United States*, 142 F.2d 151 (2d Cir. 1944); *Threlkeld v. Tucker*, 496 F.2d 1101, 1104 (9th Cir. 1974) ("Inasmuch as the federal courts are not appendages of the state courts, a federal court cannot enforce a state-court judgment without first independently establishing its own jurisdiction over the subject matter and parties.").

Once the federal court determines that it has subject matter jurisdiction over a claim for enforcement of a state court judgment, it must next consider how to enforce that judgment. Section 1738 "does not . . . provide guidance as to how state court judgments may be enforced in federal court." *Mobil Cerro Negro*, 863 F.3d at 122. At least two district courts have held that "the relief available in such a lawsuit is limited to enforcement of the state court judgment as provided by the law of the issuing state." *Ellenoff Grossman & Schole LPP v. Tempus Applied Sols. Holdings, Inc.*, Civil Action No. 4:20-cv-68, 2020 WL 4926144, at *3 (E.D. Va. Aug. 21, 2020) (citing 50 C.J.S. *Judgments* § 1364 (2012); 18B Wright & Miller, *Fed. Prac. & Proc. Juris.* § 4469 (2d ed.)); *see Villoldo*, 659 F. Supp. 3d at 1187.[6]

In summary, a party seeking to enforce a judgment from one court in another court has three potential options: (1) the judgment of a state court may be registered in the state court of another state pursuant to the UEFJA or other applicable legal authority; (2) the judgment of a federal court may be registered in another federal court pursuant to 28 U.S.C. § 1963; or (3) the judgment of a state court may be enforced in a federal court under 28 U.S.C § 1738 by means of "the traditional, if rather cumbersome, strategy of bringing a civil action on the state-court judgment by invoking, for example, the diversity jurisdiction of the federal court." *Caruso v. Perlow*, 440 F. Supp. 2d 117, 119 (D. Conn. 2006); *see Mobil Cerro Negro*, 863 F.3d at 122 ("[I]t was the case in 1966, and remains so today, that federal courts generally require that a civil action be filed, with notice to the judgment creditor, before enforcing a

---

[6] In anticipation of the April 9 status conference on Plaintiff's summary judgment motion, the Court issued an order addressing "what measures, after 'domesticating,' registering, or otherwise recognizing the Illinois [j]udgment in this Court, Plaintiff intends to take in an effort to enforce the [j]udgment against Defendant, and what legal authority allows for that enforcement." (ECF Entry No. 19). However, Plaintiff did not provide any authority regarding how she will attempt to enforce any judgment issuing from this Court.

state court judgment."). The relief requested in this case clearly falls within the third category.

Accordingly, this Court must give full faith and credit to the Illinois state court judgment to the extent that (a) the Illinois court would give such credit,[7] and (b) the Court has subject matter jurisdiction over Plaintiff's Complaint and personal jurisdiction over Smith. *See Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 90 n.7 (2d Cir. 2000) (describing two-part analysis required under Full Faith and Credit Act as "(1) whether, under federal law, the judgment is entitled to full faith and credit; and (2) what preclusive effect would the judgment be given under the law of the rendering state"). Given Defendant's appearance with counsel in the Illinois state court case and his failure to appeal or otherwise challenge the judgment against him in that court or to collaterally attack the judgment in this or another court, I find that the Illinois court would have no reason to discredit its judgment against Defendant.[8] *See Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986) ("[I]f the parties *could* have challenged the court's power to hear a case, then *res judicata* principles serve to bar them from later challenging it collaterally."); *Weininger v. Castro*, 462 F. Supp. 2d 457, 472 (S.D.N.Y. 2006)

---

[7] *See Johnson v. Muelberger*, 340 U.S. 581, 587 (1951) (holding that collateral attack is barred "where the party attacking would not be permitted to make a collateral attack in the courts of the granting state"); *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000) ("To determine the effect of a state court judgment, federal courts, including those sitting in diversity, are required to apply the preclusion law of the rendering state. Federal courts may not employ their own rules . . . in determining the effect of state judgments, but must accept the rules chosen by the State from which the judgment is taken." (citations and internal quotation marks omitted)); *Weininger v. Castro*, 462 F. Supp. 2d 457, 471 (S.D.N.Y. 2006) ("[T]he court is obliged to enforce the judgment only to the extent that the courts of the rendering state would be similarly bound. Hence, if the state courts would entertain a collateral attack on the judgment, so may the federal courts." (citation and internal quotation marks omitted)).

[8] The Illinois court exercised personal jurisdiction over Defendant because he was properly served within the State. *See* 735 ILCS 2-209(b)(1) ("A court may exercise jurisdiction in any action arising within . . . [Illinois] against any person who . . . [i]s a natural person present within [Illinois] when served . . . ."). Moreover, Smith has waived any objection he may have had to personal jurisdiction in the Illinois court by appearing and litigating the case in that court for over two years. *See* 735 ILCS 5/2-301(a-6) (party's filing of any pleading or motion waives later objection to personal jurisdiction).

("[A] judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." (internal quotation marks omitted)).  Defendant may not now challenge jurisdiction in a collateral attack on the Illinois judgment, as he already had an opportunity to litigate that question in the Illinois case and did not.  *See Tennessee ex. rel. Sizemore v. Sur. Bank*, 200 F.3d 373, 381 (5th Cir. 2000) (citing *Sherrer v. Sherrer*, 334 U.S. 343, 352 (1948)) ("[W]here a party has had an opportunity to litigate the question of jurisdiction but fails to do so, the second court must give full faith and credit to the first court's determination of jurisdiction.").

Moreover, accepting the Complaint's unrebutted allegations that Plaintiff is a citizen of Illinois, Defendant is a citizen of Vermont, and the amount in controversy exceeds $75,000 (*see* Doc. 1 at 1, ¶ 3; Doc. 3), I find that this Court may exercise subject matter jurisdiction. *See* 28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States.").  Personal jurisdiction over Defendant has been established and venue is proper in this Court given the unanswered allegation in the Complaint that Defendant is a citizen of the State Vermont (*see* Doc. 1 at 1, ¶ 2) and that he was personally served with process in Vermont (*see* Doc. 3).[9]  *See* Fed. R. Civ. P. 4(e)(2)(A); 28 U.S.C. 1391(b)(3); *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960) ("Of course, venue, like jurisdiction over the person, may be waived.  A defendant, properly served

---

[9] Notwithstanding this finding of personal jurisdiction over Smith, "[a] court entering a default judgment may assume that it has jurisdiction over the defendant when the defendant does not appear in court to contest the judgment." *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 730 (2d Cir. 1998).  But "that assumption does not preclude the defendant from later contesting jurisdiction in the enforcing court." *Id.*

with process by a court having subject matter jurisdiction, waives venue by failing seasonably to assert it, or even simply by making default."); *MD Produce Corp. v. 231 Food Corp.*, 304 F.R.D. 107, 108 (E.D.N.Y. 2014) ("[P]roper venue is not essential to a valid judgment; therefore[,] a venue defect will be waived by failing to appear and suffering a default judgment." (internal quotation marks omitted)).

Finally, I find that the Illinois state court judgment should be enforced in the amount of $156,000 as specified in the certified Illinois judgment. (Doc. 1-1 at 2.) Although the Complaint states that "[i]nterest has accrued and will continue to accrue at a rate of nine percent per annum pursuant to 735 ILCS 5/2-1303(a)" (Doc. 1 at 2, ¶ 9), the Illinois judgment does not award interest (Doc. 1-1 at 2, Doc. 1-2 at 2). Moreover, Kirshner has not requested interest in her "Amended Motion for Entry of Default Judgment." (*See* Doc. 21.) The Court does not interpret the Amended Motion to seek pre-judgment interest. *See Sanchez v. Jyp Foods Inc.*, 16-CV-4472 (JLC), 2018 WL 4502008, at *14 (S.D.N.Y. Sept. 20, 2018) (citing cases). Plaintiff is entitled to post-judgment interest. Under 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." *See Tacuri v. Nithun Constr. Co.*, No. 14–CV–2908 (CBA)(RER), 2015 WL 790060, at *12 (E.D.N.Y. Feb. 24, 2015) ("Unlike prejudgment interest, Plaintiffs are entitled to post-judgment interest on all money awards as a matter of right.").

Accordingly, I recommend that Plaintiff be awarded post-judgment interest at the federal statutory rate on the amount awarded in the Illinois state court judgment. *See SuperCom Ltd. v. Sabby Volatility Warrant Master Fund Ltd.*, No. 21 CV 2857 (LAP), 2023 WL 8372271, at *2 (S.D.N.Y. Dec. 4, 2023) ("[F]ederal law governs post-judgment interest, and the formula set forth in 28 U.S.C. § 1961 shall inform the parties' calculation."). Post-

judgment interest should apply from the date the Clerk of Court enters judgment in this case until the date of payment.

## Conclusion

This Court is obligated to give full faith and credit to the underlying Illinois state court judgment. For the reasons explained above, I recommend that the Court GRANT Plaintiff Linda Kirshner's "Amended Motion for Entry of Default Judgment" (Doc. 21) and enter judgment against Defendant Gregory E. Smith and in favor of Plaintiff in the amount of the Illinois state court judgment, $156,000, plus post-judgment interest applied from the date the Clerk of Court enters judgment until the date of payment. For purposes of enforcement of the Illinois judgment in this District, I note that any final judgment of this Court will not alter or supersede the Illinois judgment but simply recognize the judgment and accord it the same force and effect as it would be given in the state court of Illinois.

The Clerk of Court is respectfully requested to assign this matter to a United States District Judge for consideration of this Report and Recommendation.

Dated at Burlington, in the District of Vermont, this 10th day of July 2024.

<div style="text-align: right;">

*/s/ Kevin J. Doyle*  
United States Magistrate Judge

</div>

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections that shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)).